## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXIMILLIAN REIS and ELPIDIO SANCHEZ, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, d/b/a AUDI OF AMERICA, INC., AUDI OF AMERICA, LLC., a Delaware Corporation, AUDI AG, a German corporation, and VOLKSWAGEN AG, a German corporation, | **CLASS ACTION** |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Maximillian Reis and Elpidio Sanchez (collectively, "Plaintiffs"), individually and on behalf of all similarly situated persons in the United States ("Class Members"), upon personal knowledge of facts pertaining to them and on information and belief as to all other matters, by and through undersigned counsel, hereby bring this Class Action Complaint against Defendants Volkswagen Group of America, Inc., ("VWGOA") d/b/a Audi of America, Inc., Audi of America, LLC ("AOA"), Audi AG, and Volkswagen AG ("VWAG") (collectively, "Defendants").

1

## INTRODUCTION

1.      Plaintiffs bring this action individually, and on behalf of a nationwide class and classes for the states of California and New York (more fully defined below), for the benefit and protection of purchasers and lessees of 2018-2023 Audi A6, A7, A8, and Q7 vehicles; 2018 and 2020-2023 Audi S6, S7, S8, and R8 vehicles; 2018 and 2021-2023 Audi RS 7 vehicles; 2019-2023 Audi Q8 vehicles; 2020-2023 Audi A6 allroad, SQ7, SQ8, and RS Q8 vehicles; 2021-2023 Audi A7 e quattro vehicles; and 2020-2021 Audi A8 e quattro vehicles ("Class Vehicles" or "Vehicles").[1]

2.      As alleged herein, the Class Vehicles are defective and unsafe. The Vehicles are equipped with a defective electrical system that causes the Vehicles to enter "limp mode"—which causes the Vehicles to drastically decelerate and lose speed—with little to no notice, exposing drivers, occupants, and others on the road to dangerous conditions. Plaintiffs' investigation of the defect is ongoing, and the root cause of the defect will be developed during discovery, but upon information and belief, the defect manifests due to the failure of the starter generator and/or the alternator in the Class Vehicles. This poses a significant safety hazard to drivers and occupants of Class Vehicles and other members of the public as Vehicles

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models and model years included in the definition of Class Vehicles after conducting discovery.

experiencing the defect rapidly and unexpectedly slow down, lose electronic functions and power, shut down, have the transmission locked, and/or experience limited steering without any regard to the speed of the Vehicle or traffic conditions.

3.      Defendants VWAG and Audi AG design, manufacture, and export the Class Vehicles. Defendants VWGOA and Audi of America, LLC are responsible for Defendants VWAG's and Audi AG's operations in the United States and import, market, distribute, sell, service, and repair the Class Vehicles through their extensive network of authorized dealerships in the United States.

4.      Defendants are and have been aware of the defect. Consumers presenting Class Vehicles for a defect-related repair are informed that Defendants know about the issue, that dealerships are seeing the issue frequently, and many consumers are informed that replacement generators and alternators have been on backorder. As a result, Class Vehicle owners and lessees are left in the position where their Vehicles may be unsafe to operate or inoperable for long periods. Nevertheless, when owners and lessees of the Class Vehicles seek a repair for the defect, they routinely are told there is no recall and are many consumers are forced to pay for this safety-related repair at their own expense. Obtaining an attempted repair for the defect is not cheap. Consumers report costs of repair that exceed $7,000. Furthermore, when owners and lessees present their Vehicles to dealerships after the defect manifests, Defendants fail to reimburse class members for rental cars,

towing fees, and other out of pocket costs incurred due to the defect.

5.     Owners and lessees of Class Vehicles experiencing the defect report observing one or more of the following warning signals on their dashboard shortly before or upon experiencing loss of power: "Electrical system: malfunction! Safely stop vehicle"; "Electrical system: malfunction! Please contact Service"; "Parking aid: malfunction!"; "Transmission: malfunction!"; "Rear spoiler: malfunction!"; "Drive system: malfunction! Stop vehicle safely"; "Traction control: malfunction!"; "Tire pressure monitoring system: malfunction!"; "Parking brake: malfunction!"; "Automatic start/stop system: malfunction!"; and "Start/stop system: malfunction! Below are photos evidencing some of the warning lights owners and lessees observe on their dashboard when the defect manifests:













6.     As a result of the defect, the Class Vehicles do not perform as warranted, and Defendants omitted information about the defect.

7.     In manufacturing, marketing, and selling and/or leasing the unsafe Vehicles, Defendants have engaged in unfair, deceptive, and misleading consumer practices, and have breached their warranties with the Vehicles' purchasers and lessees, including Plaintiffs.

8.     The defect presents a safety concern, and though numerous consumers have complained about it, Defendants have failed to issue a recall and adequately address the defect.

9.     Prior to selling the Vehicles, Defendants knew that the Vehicles were defective, yet omitted and kept this material fact from Plaintiffs and other class members. Rigorous pre-release testing made Defendants aware of the defect. The defect is also widely discussed and complained about, including on message boards devoted to the Class Vehicles and in complaints made directly to the National Highway Traffic Safety Administration (NHTSA), all of which Defendants review and are aware. Nevertheless, Defendants have failed to recall the Vehicles, have not successfully remedied the defect, have not made owners and lessees of the Class Vehicles whole, and have not made the Class Vehicles safe.

10.     Defendants' knowledge of the defect is also supported by a series of technical service bulletins ("TSB") they issued regarding the defect. In TSB #272245 2058831/5, issued on September 27, 2022, Defendants listed the models and years affected by the defect and directed dealerships to perform a software

update and/or to replace the alternator. Furthermore, Defendants issued TSB #10228815 on December 22. 2022, where they announced that Defendants will reimburse costs associated with Audi branded loaner support to customers affected by alternator failures and resulting long waits due to backorder in parts. Despite these bulletins and directions, Defendants failed to issue a recall and owners and lessees of Class Vehicles continue to experience the defect due to Defendants' refusal to perform necessary repairs and replacements proactively.

11.     Some owners and lessees report receiving a letter from Defendants indicating that the alternators in their Vehicles will receive a 7-year warranty extension. Despite this letter, Defendants continue to refuse to issue a recall and owners and lessees of Class Vehicles continue to experience the defect due to Defendants' refusal to perform necessary repairs and replacements proactively. Furthermore, it is yet unknown whether the replacement alternators and the software update performed on Vehicles permanently fix the defect.

12.     The defect has caused many Class Vehicle owners and lessees significant danger, risk of safety, inconvenience, and loss of use of their Vehicles. Many owners and lessees have had to leave their Vehicles at dealerships, often waiting for several months to have their vehicles repaired since the replacement parts are on backorder. Many consumers have paid thousands of dollars at their own expense for costs of repair and labor.

13.     As a result of the defect, Plaintiffs and class members are unable to utilize their Vehicles as advertised and in a safe manner and have incurred damages. Specifically, Plaintiffs and class members were each injured on account of receiving Vehicles that were fundamentally different from what they believed they were purchasing, and less valuable than was represented. Plaintiffs and class members did not get the benefit of their bargains, experienced diminution in the value of their Vehicles, and sustained losses in the form of other out of pocket costs incurred that are related to the defect.

14.     To redress these and other harms, Plaintiffs bring claims for violations of California and New York consumer protection statutes, breaches of express and implied warranties, common law fraud, and unjust enrichment.

15.     The allegations herein are based on personal knowledge as to Plaintiffs' own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

16.     The Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2)(A) because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed class member is of diverse citizenship from Defendants, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000),

excluding interest and costs. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17.    The Court has personal jurisdiction over Defendants and venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this District, Defendant VWGOA is incorporated in this District, and VWGOA conducts substantial business in this District.

18.    At all pertinent times, Defendants were engaged in the marketing, advertisement, sale, and lease of the Class Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

### Plaintiffs

### *Plaintiff Maximillian Reis*

19.    Plaintiff Max Reis is a resident of the state of California.

20.    On or about August 21, 2021, Plaintiff purchased a used 2019 A6 from Audi of Beverly Hills, an authorized Audi dealership and repair center located in Beverly Hills, California. Plaintiff Reis purchased this vehicle for personal, family, or household use.

21.    Plaintiff Reis began experiencing the defect in his vehicle in early 2022 while he was driving on a freeway in heavy traffic. Plaintiff Reis first observed the

electrical system malfunction warning light on his vehicle's dashboard and then noticed that the air conditioner turned off and the vehicle began losing power. Plaintiff Reis managed to drive home, where he shut down the vehicle and tried to restart without success. Plaintiff Reis called Audi Oxnard, an authorized Audi dealership in Oxnard, California. Plaintiff was informed by the dealership that he must call Audi of America as they are the entity dealing with warranty related services. Plaintiff Reis followed the dealership's instructions, and his vehicle was towed to Audi Oxnard the next day.

22. Plaintiff Reis's vehicle remained at the dealership for approximately three weeks, during which time he was unable to use his Vehicle. The dealership replaced the alternator and recharged the 48V battery in his vehicle.

23. In early 2023, Plaintiff Reis received a letter from Audi of America, informing him that the alternator in his vehicle has an extended warranty.

24. At the time of purchasing his Vehicle, Plaintiff Reis did not know that his Vehicle was equipped with the defect alleged herein. Had Defendants disclosed this on their website, through their dealerships, in their warranty and owner manuals, on the Monroney window stickers, or elsewhere prior to Plaintiff purchasing his Class Vehicle, Plaintiff would not have purchased his Vehicle, or would not have paid the purchase price that he did. Plaintiff relied upon Defendants to provide the full picture of information regarding his Vehicle and relied upon the idea that

Defendants would not withhold material information about the Vehicle. As a result, Plaintiff received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

### Plaintiff Elpidio Sanchez

25.     Plaintiff Elpidio Sanchez is a resident of the state of New York.

26.     On or about November 27, 2021, Plaintiff purchased a used 2019 Q8 from Kia of Riverdale located in Riverdale, New Jersey.

27.     Plaintiff Sanchez purchased this vehicle for personal, family, or household use.

28.     Plaintiff Sanchez began experiencing the defect in his vehicle approximately a day after purchase. The defect manifested when Plaintiff Sanchez first observed the electrical system malfunction warning light on his vehicle's dashboard while driving in New York City. Then, the vehicle lost power breaking, power steering, and the infotainment system turned off. Plaintiff Sanchez pulled his vehicle over to the side of the street, turned it off and started it again. Initially, Plaintiff's vehicle appeared to be functioning properly, however, within a couple of hours, the same sequence of warning and electrical failures happened. Plaintiff Sanchez then called Audi of Meadow Lands, an authorized Audi dealership in New Jersey, and set an appointment for December 17, 2021. Since Plaintiff Sanchez needed to get a loaner vehicle, the earliest appointment was weeks away. After

keeping the vehicle for approximately a week, Audi of Meadow Lands called Plaintiff and informed him that his vehicle was reset and that he could pick up his vehicle.

29.    A few weeks later, Plaintiff Sanchez experienced the same defect again. He immediately called Audi of New Rochelle, an authorized Audi dealership located in New York, and booked an appointment for February 1, 2022. Plaintiff Sanchez picked up his vehicle from the dealership on March 4, 2022, after he was informed that the dealership performed routine maintenance on the vehicle and reset the system.

30.    A few weeks later, Plaintiff Sanchez's vehicle began exhibiting the same symptoms of the defect. Plaintiff Sanchez has experienced loss in power breaking and power steering, and the infotainment system turning off approximately a few times per week for nearly a year. On or about March 2, 2023, Plaintiff Sanchez took his vehicle to Audi of New Rochelle. The dealership kept the vehicle until March 14, 2023, and informed Plaintiff that they were unable to duplicate the issue. However, a technician told Plaintiff Sanchez on the phone that they performed a battery reload to the 48V battery and that they were aware of a widespread issue with the alternators. The dealership replaced the fuel pump in Plaintiff's vehicle per a recall and performed a software update.

31.    Plaintiff Sanchez continues to experience the defect.

32.     At the time of purchasing his Vehicle, Plaintiff Sanchez did not know that his Vehicle was equipped with the defect alleged herein. Had Plaintiff known of the defect prior to purchase, Plaintiff would not have purchased his Vehicle, or would not have paid the purchase price that he did. As a result, Plaintiff received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

**Defendants**

33.     Defendant VWGOA is a New Jersey corporation with its principal place of business in Herndon, Virginia. VWGOA is a wholly owned North American subsidiary of VWAG and responsible for the operations of the Audi, Volkswagen, Bugatti, Lamborghini, and Bentley brands in the United States. VWGOA has also registered Audi of America, Inc. with the Virginia Secretary of State for its operations concerning the Audi brand in the United States. VWGOA is engaged in the business of marketing, warranting, advertising, selling, and servicing Audi vehicles across the United States.

34.     VWGOA has 638[2] authorized dealerships across the United States and AOA has 320[3] authorized dealerships across the United States—which are their agents—and control the distribution of automobiles, parts, services, and warranty repairs for Audi branded vehicles throughout the United States, all of which are

---

[2] https://www.scrapehero.com/location-reports/Volkswagen-USA/.
[3] https://www.scrapehero.com/location-reports/Audi-USA/.

under VWGOA's and AOA's control. VWGOA and AOA authorize these distributors and dealerships to sell Audi vehicles, parts, and accessories and to service and repair Audi vehicles using Audi parts.

35.    Defendant AOA is a Delaware limited liability company with its principal place of business located at Herndon, Virginia 20171. AOA is a wholly owned U.S. subsidiary of Audi AG.

36.    Audi AG is a German corporation with its principal place of business located in Ingolstadt, Germany. Audi AG is the parent company of AOA and a wholly owned subsidiary of the Audi Group, which is a wholly owned subsidiary of Defendant VWAG.

37.    Defendant VWAG, is a German corporation with its principal place of business located in Berliner Ring 2, 38440, Wolfsburg, Germany. VWAG's Wolfsburg headquarters include manufacturing plants, production facilities, warehouses, and administration buildings that employ thousands of VWAG employees.

38.    The design, manufacture, distribution, service, repair, modification, and installation of the electrical system and other components within the Class Vehicles were controlled exclusively by VWAG, VWGOA, and their agents and affiliates.

39.    There exists, and at all relevant times existed, a unity of ownership between VWAG, VWGOA, Audi AG, AOA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

40.    VWAG and Audi AG communicate with VWGOA and AOA concerning virtually all aspects of the Audi products VWGOA and AOA distribute, sell, warrant and service within the United States, including appropriate repairs for defects and whether Defendants will repair defective parts and assemblies.

41.    VWGOA and AOA develop sales and marketing materials, advertisements, owner's manuals, warranty booklets, and maintenance recommendations and schedules for the Class Vehicles, as well as TSBs that Defendants issue to authorized dealerships to address known defects.

42.    VWGOA and AOA also design, determine the substance of, and affix to Defendants' vehicles the window stickers visible on every new Audi branded vehicle offered for sale at their authorized dealerships. Defendants control the content of these "Monroney" stickers—its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Defendants are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. § 1231 *et seq.*, which, among other things, prohibits the removal or alteration of the sticker

by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale.

43.     Defendants engage in continuous and substantial business in the state of New Jersey.

## **FACTUAL BACKGROUND**

44.     Over the last few decades, vehicle manufacturers have sought avenues to increase efficiency and fuel economy. The use of energy produced by engines to power electronic systems through a generator has been one of the earlier adoptions by the automaking industry to maximize efficiency.

45.     Class Vehicles have been designed to have the ability to power their electronic functions via the use of a generator while the engine is running. Class Vehicles are equipped with a 48V battery, a 48V starter/generator or belt alternator starter, and a 12V-48V bidirectional converter. The battery starts the engine and then acts as a dynamo, translating the combustion engine's rotational energy into electrical power. The converter is responsible for supplying energy from the 48V system to power Class Vehicles' electronic features, such as power breaking, power steering, air conditioning, spoiler, among others.

46.     The proper operation of alternator, as well as the other components of a vehicle's electrical system, is crucial to the functionality and drivability of a vehicle in a safe manner. However, the defect in Class Vehicles causes the electrical

system to fail and results in the loss of key features powered by the alternator and the battery.

47.    The Class Vehicles suffer from a range of issues caused by the defect including rapid and unexpected deceleration, loss of electronic functions and power, shutting down of the engine, locking of the transmission, and/or inhibiting steering capabilities, among others. Class Vehicle owners and lessees report observing one or more of the following warning signals on their dashboard shortly before or upon experiencing the symptoms described above: "Electrical system: malfunction! Safely stop vehicle"; "Electrical system: malfunction! Please contact Service"; "Parking aid: malfunction!"; "Transmission: malfunction!"; "Rear spoiler: malfunction!"; "Drive system: malfunction! Stop vehicle safely"; "Traction control: malfunction!"; "Tire pressure monitoring system: malfunction!"; "Parking brake: malfunction!"; "Automatic start/stop system: malfunction!"; and "Start/stop system: malfunction!".

48.    The defect in the Class Vehicles presents an extreme safety issue. Sudden loss of power and deceleration place drivers, occupants, and others at significant risk of collision.

49.    Class Vehicle owners and lessees are at risk of experiencing the manifestations of the defect described above and suffering potentially fatal crashes.

Furthermore, during the time in which Vehicle owners and lessees take their Vehicles in for a repair or replacement, they are left without access to their Vehicles.

50.    Many owners and lessees report that when they take their defective Vehicles in for a repair, replacement parts are not available due to a backorder. Consequently, owners and lessees are forced to drive their Vehicles in unsafe conditions or to lose access to their Vehicles while waiting for parts. Consumers whose Vehicles are out of warranty are also told they will be responsible for the cost of replacement and labor, which can be over $7,000.

51.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of message boards and other websites where consumers have complained of the exact same defect with the Class Vehicles.

52.    The following are a handful of the numerous complaints submitted on the NHTSA website and on other websites and forums by Class Vehicle owners[4]:

From NHTSA, 2019 Q7, 8/5/2019[5]

I WAS GOING APPROXIMATELY 55 MILES PER HOUR IN THE CENTER LANE ON THE INTERSTATE. SHORTLY AFTER SHIFTING THE CAR INTO SPORT MODE, THE VEHICIE HAD SEQUENTIAL MALFUNCTION NOTIFICATIONS APPEAR ON MY SCREEN. THE SPECIFIC ORDER IS DIFFICULT TO REMEMBER DUE TO THE RAPIDNESS OF THE WHOLE

---

[4] The following complaints are reproduced as they appear online. Any typographical errors are attributable to the original author.
[5] https://www.nhtsa.gov/vehicle/2019/AUDI/Q7/SUV/AWD.

SITUATION. THE MALFUNCTIONS APPEARING ON THE SCREEN OVER THE STEERING WHEEL WERE: TRACTION CONTROL MALFUNCTION, TPMS (TIRE PRESSURE MONITORING SYSTEM MALFUNCTION, PARKING BRAKE MALFUNCTION, AUTOMATIC START/STOP SYSTEM: MALFUNCTION, START/STOP SYSTEM: MALFUNCTION, AND A DRIVE SYSTEM: MALFUNCTION. THE MAJORITY OF THESE WARNINGS SAID TO PLEASE CONTACT SERVICE. WHILE THE MALFUNCTIONS APPEARED THE ENGINE OF MY CAR STOPPED WORKING, ACCELERATION STOPPED WORKING, AND THE ENGINE DID NOT MAINTAIN THE CURRENT SPEED. THE VEHICLE ESSENTIALLY DIED AT HIGHWAY SPEED WHILE I WAS TRAVELLING IN THE MIDDLE LANE. I TURNED ON MY HAZARD LIGHTS AND WAS ABLE TO COAST TO THE SHOULDER (AFTER OTHER DRIVERS ALLOWED ME OVER). ONCE STOPPED I TURNED OFF THE CAR, PRESSED THE START/STOP BUTTON WHICH RESULTED IN A REPEAT OF THE START/STOP MALFUNCTION INDICATOR, AND IT INSTRUCTED ME TO 'MANUALLY START'. I THEN PRESSED THE BUTTON OFF AND BACK ON AGAIN, THE CAR THEN RESTARTED. THE CAR SHIFTED INTO DRIVE AND I TOOK IT IMMEDIATELY TO THE LOCAL AUDI DEALERSHIP.

From NHTSA, 2020 Q7, 12/13/2022[6]

While driving at high speeds on the Freeway with my wife and 2 children (ages 4 & 5), an alert on the dashboard said - Electric System Malfunction. Drove straight to the near by dealership and was told not to turn off the vehicle as it might not start. Service Advisor said we were lucky it didn't stop on the freeway as it has for others. He asked us to collect our belongings as the car was not drivable due to a known electrical system malfunction. He said this was a known issue as there were many others impacted with this same issue and have been waiting months for the parts. He also said Audi of America is well aware of the issue but don't want to publicize it as they don't have the parts available to repair all the impacted vehicles. He provided me with the Audi TSB 27 22 41 showing they knew about it since at least March 2021 (Attached).

---

[6] https://www.nhtsa.gov/vehicle/2020/AUDI/Q7/SUV/AWD.

From NHTSA, 2021 Q7, 4/3/2023[7]

The contact owns a 2021 Audi 7. The contact stated that while operating the vehicle electrical warning messages would suddenly display. One while the wife was driving approximately 20 MPH the vehicle suddenly shut off in the middle of the road. The vehicle was later towed to the local dealer who diagnosed that the alternator was faulty and needed to be replaced. The vehicle was not yet repaired. The contact was informed by the service advisor that the failed alternator was a known issue and the manufacturer had extended the warranty for the alternator and the replacement alternator was on a ten-week delay due to the high demand for the part. The manufacturer was notified of the failure. The failure mileage was 27,000.

From NHTSA, 2021 Q7, 3/13/2023[8]

Electrical system malfunction causing the car to fail Steering Parking brake Vehicle lights Vehicle starting system Stabilization control

From NHTSA, 2021 Q7, 1/25/2023[9]

While driving the vehicle, error messages began appearing on the in-panel dashboard display. At first, a yellow/orange battery icon appeared with the message "Electrical system: malfunction! Please contact Service". Within an hour, the car experienced another electrical system malfunction (red battery icon appeared with the message "Electrical system: malfunction! Safely stop vehicle") along with a host of other error messages (Brakes: malfunction, Steering: malfunction, Parking brake: malfunction, Vehicle lights: malfunction, Stabilization control (ESC/ABS): malfunction, Drive system: malfunction, Transmission: malfunction). The car was undrive-able at this point, coasted to a stop and could not be restarted while on an active roadway. The car had to be towed to the dealership, where it still remains today. * Components or systems malfunctioned: Electrical system, brakes, steering, parking brake, vehicle lights, stabilization control (ESC/ABS), drive system,

---

[7] https://www.nhtsa.gov/vehicle/2021/AUDI/Q7/SUV/AWD.
[8] *Id.*
[9] *Id.*

21

transmission. It is available at the Audi dealership service location for inspection * My safety was put in significant danger due to the car shutting down on an active roadway with no control over the vehicle. * The problem has been confirmed by the dealer. * The vehicle has been inspected by the dealership service center but not by police or insurance representatives. * Many warning lamps and messages appeared within an hour of the car becoming inoperable.

From NHTSA, 2021 Q7, 1/18/2023[10]

At approximately 3:15pm CST on Friday, January 13, 2023, several electrical system warnings appeared, and the vehicle stopped in the middle of the street. We were able to restart the vehicle twice, but only able to drive it about 10 feet to move it out of the middle of the street. We then had the vehicle towed to the dealership for repairs. The dealer has told us that the electrical generator failed and needs to be replaced. It should be available for inspection, if needed. No other party, such as police or insurance, has inspected the vehicle. My safety and the safety of others was put at risk, because the vehicle died in the middle of the street with little warning and could only be moved a short distance from there. Pictures of some of the warnings are attached.

From NHTSA, 2021 Q7, 9/25/2022[11]

Was driving around 30 MPH. Audi Q7started showing malfunctions on the dashboard, stabilization control malfunction, transmission malfunction, startup system malfunction, backup system malfunction, drivers assist malfunction, tire pressure malfunction, drive system malfunction. The vehicle started to brake on it own, fishtailed and then started to accelerate on its own.

From NHTSA, 2019 Q8. 4/5/2023[12]

Electrical malfunction illuminated on the dash than brake malfunction illuminated than the vehicle lost all power no power to windows locks

---

[10] *Id.*

[11] *Id.*

[12] https://www.nhtsa.gov/vehicle/2019/AUDI/Q8/SUV/AWD

but I was able to roll off an exit and waited for a tow truck to tow to nearest dealer

From NHTSA, 2019 Q8, 3/4/2023[13]

November 18, 2022 a warning lamp of electric system problem was displayed. There is no local Audi dealer and I decided to take the vehicle to my local automotive repair shop that does non warranty repair on Audis. I drove approximately 6-8 miles after the light came on and was one half mile from the service technicians when within 300 yards the vehicle became sequentially inoperable. First power steering, then transmission, brakes , ended with engine failure. I was in rush hour traffic and unable to steer off the road so I was blocking traffic near an intersection. My flashers and power windows were all that functioned. The doors were locked. When the tow truck arrived he let me out of the car. I was not injured and the vehicle was not hit either. The vehicle was transported to Audi Beaverton Oregon and now 3 1/2 months later is still there because there are no available starter/generator units available in this country. That unit failed and was the cause for my Audi's complete shutdown. This was a potentially very dangerous situation and needs to be reported for a recall campaign. I have read that there are thousands of similar failures of the starter/generator systems in the USA and no available parts. I still have no estimate from my Audi Beaverton dealer/sevice supervisor as to when I can expect to get my car repaired and returned to me. They have not provided a loaner vehicle and refuse to cover the full cost of a rental car. I am disappointed in Audi's level of customer service and communication.

From NHTSA, 2019 Q8, 2/17/2023[14]

On 12/12/2022 I was driving and the Q8 lost power and I coasted to a stop. All lights on driver panel were flashing or sequencing through. After sitting on the side of the road for 5 or so minutes I tried starting the car again. This time it started and I drove another 8 miles almost to my home when the car again just died in the road. This time I couldn't get it to restart. I had to have it towed to my local garage as my dealership was an hour and fifteen minutes away. The car has been

---

[13] *Id.*
[14] *Id.*

diagnosed with needing an alternator, which no one including the dealerships have because this is a problem with many vehicles. It has now been over two months without my car.

From NHTSA, 2019 Q8, 2/15/2023[15]

In September 2022, I contacted the dealership to schedule my 50k service after observing a yellow battery light indicator flash on and then resolve itself by turning off. The mileage on my Q8 was approximately 44K at this time. I was also experiencing a passenger seatbelt warning issue despite no one in the passenger seat. The soonest the Audi service department could get me scheduled was on February 14, 2023. This has been an issue with Audi service departments at least the past 2 years. Since scheduling, I've experienced the warning issues several times On Thursday, February 2, 2023, I got a flashing yellow battery light in addition to other warnings that flashed on and then off. Because of this, I decided to take my car to the dealership for an emergency service on Friday, February 3, 2023, before traveling out of town the next week. While enroute to the dealership, the instrument panel alerted to an electrical system malfunction by displaying a yellow and then red battery icon. Multiple other warning lights for other systems malfunctioning displayed and the car stopped in traffic. My car was towed to the dealership. Once at the dealer, I was told that this was due to the generator failing and the part is on backorder due to being manufactured in Ukraine. The dealership stated this failure is apparently widespread, citing 56+ cars at this dealership and 100+ at the other with the same issue. Based upon this, the dealership informed me I qualified for the Audi USA buyback program and to contact them for a case number. When I called, I was told I had to wait 10 days to file or have had 3 reported incidents on record. On Februrary 14, 2023, I was told I did not qualify because my car was over 50k at the time it broke down. My mileage is 54,128. The issue began before 50k. I learned from the dealership, I qualify for the buyback because Audi extended the factory warranty on 1/31/2023 to include unlimited miles. I have an audio recording.

---

[15] *Id.*

From NHTSA, 2019 Q8, 2/10/2023[16]

2019 Q8 with 48 V battery problem which causes the Alternator failing. The car is in shop for a month, without any ETA on parts coming in. Audi knew this issue without any plan B. My shop told me there are cars with same issue sitting in the dealship shop waiting for parts since Oct 2022. Today is Feb 10 2023.

From NHTSA, 2019 Q8, 1/26/2023[17]

Got Electrical System Malfunction to start. I called service and they said car was safe to drive. Continued driving got a fault for automatic start/Stop malfunction, followed by: Right lug nut loose Right brake light malfunction Parking brake malfunction Distance indicator malfunction Power Steering malfunction Drive train ,malfunction. Car engine started hesitating and dash went totally blank. Car was hard to steer , luckily I live near the dealership. Dealer said there are 30 cars in their service department with the same problem. I am #3000 on Audis waitlist for parts to fix problem. 48 volt battery and alternator.

From NHTSA, 2019 Q8, 1/25/2023[18]

The car completely shut down in the middle of traffic with an electrical system malfunction and safety system malfunction.

From NHTSA, 2019 Q8, 1/25/2023[19]

Alternator/Ignition Generator died while driving vehicle causing vehicle to die in the middle of the road.

From NHTSA, 2019 Q8, 1/11/2023[20]

My alternator failed with "electrical malfunction" alerts until the car decided to shut down on the highway with my newborn and wife. The

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

bigger issue is I'm being told there is a national shortage for this part with no ETA on receiving the part and that it could be MONTHS until they receive the alternator replacement.My car is in dealership since Dec 6 2022. Today is 01.10.2023

From NHTSA, 2019 Q8, 1/11/2023[21]

Electrical malfunction warning light. Vehicle stop and was steering wheel locked and then unlocked. Then stated ok to steer but steering was very hard. No power. Multiple systems fail warnings lights. Alternator is what they have stated. No part available. They currently (from what the service dealer states they have approximately 15 cars waiting). One dealer The issue is the in-operability of the car. Just stops which is highly worrisome.

From NHTSA, 2019 Q8, 1/10/2023[22]

While driving in heavy traffic on 12/23/22 the entire electrical system shut down and all power was lost. Fortunately I was not hit by another vehicle and coasted into a parking lot with no power. This is very dangerous. Per conversations with the dealership and with Audi (1/10/23), alternators on thousands of vehicles are failing (possibly due to a software issue). The vehicles are sitting on dealer lots and in driveways useless. Audi online forums confirm this as well. There are no alternators available. No recall has been issued and no warning of this unsafe situation has been made by Audi. Per the dealership, they are largely in the dark as well as there has been no meaningful communication by Audi. Someone will get hurt when their car dies on a highway. People are paying thousands for their cars to be undrivable. Audi dealers will not trade the vehicles because they are effectively worthless until repaired.

From NHTSA, 2019 Q8, 1/3/2023[23]

The Generator (Part #: 4N0903028P) failed causing the car to shutoff while driving. This is a known issue by Audi as it has issued a TSB.

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

Further steps must be taken by the OEM to ensure safe operation of the vehicle by its owners. This is a safety issue that must be resolved soonest!

From NHTSA, 2019 Q8, 12/25/2022[24]

Vehicle lost all power and control while driving 45mph. First electrical system failure warning came on. Within 2 minutes the transmission slipped into neutral and 15 seconds later the vehicle lost power and I coasted to a stop. I was told by Audi dealership service that the starter generator failed. They mentioned they currently have over 20 vehicles in their shop and over 25 at their other location with the same problem. They also said over 1,000 cars nationwide had same problem and the part to repair is back ordered and no reasonable estimate of repair time.

From NHTSA, 2019 Q8, 12/22/2022[25]

Critical Failure - Alternator/48v Generator Issue in Audi Q8 Prestige. By now, I am well aware that the problem I'm experiencing is in the top 25 repair issues for Audi and currently there are 15,000 cars affected in the United States according to my dealer, waiting for these parts. Out of nowhere while driving on an interstate, at a high speed I got all mix of signals and the amount of time to react between the first sign that something is going wrong to the "stop operating the vehicle and pull over to the side message" and vehicle shut down, without ability to start is within just few minutes from each other. First I get a random battery error message. Battery light had popped on the dash panel. Then, system malfunction message, the whole array of different malfunctions. Noticed odd things like the auto start/stop not enabled and about 10 others error messages in regards to every system in the car. Then the speed sign sensor wasn't working, like limp mode, then the lane departure went, then the traction control system went, then the transmission something went off. I couldn't possibly make it to the dealer from that point, it was only few minutes and It told me to pull over to the side. Car would not start again, the panel wouldn't light up and only weird stuff, like windows would go up and down as I try to start the vehicle. Had to tow vehicle to the dealer (Car is still under the

---

[24] *Id.*
[25] *Id.*

original warranty). Was notified that the alternator is out and needs to be replaced. There is more to it, that part is on the back order all across the US and there is no estimate on when they're going to get it. No solution been provided and every dealership in the State has multiple vehicles awaiting for this same part.

From NHTSA, 2019 Q8, 12/6/2022[26]

alternator failed, multiple electrical/ computer systems shut down, eventually left me stranded.

From NHTSA, 2019 Q8, 12/5/2022[27]

48v Starter Generator went bad. Vehicle shut down on the high way. I have been without my car for nearly a month as the part is on back order, and there is no ETA for the part.

From NHTSA, 2019 Q8, 12/5/2022[28]

Driving down the road when sensors stopped working. Car read electrical system malfunction and engine shut down. Had to coast to the shoulder. This is a known safety issue, and should be completely recalled.

From NHTSA, 2019 Q8, 12/1/2022[29]

While driving, all the warnings came on the dash. "Electrical Malfunction", "Child seat belt malfunction", "Start/ stop malfunction", "Steering Wheel malfunction" "Power Brake malfunction" and when I came to a stop, the car completely stopped. I could not put it into neutral to push it out of the road so my car blocked a lane on a highway making it very dangerous. 2 service reps from 2 different Audi dealerships have confirmed that is this a known defect with the v48 generator/ alternator

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

From NHTSA, 2020 Q8, 2/2/2023[30]

I purchased the vehicle as a CPO, two days (1/28/23)and 200 miles later I got a warning"Electrical system malfunction". I turned the vehicle off/on and the message reappeared every time. I spoke to the dealership they advised that the issue is know to abruptly shut down power to the vehicle at any given time even while driving. I had the vehicle towed to the Audi dealership.

From NHTSA, 2020 Q8, 1/20/2023[31]

Oct 15, 2022 lights began flashing. Electrical Malfunction came up. Said to pull over safely as soon as possible. Dealership said it is not safe to drive. Is still at the Audi dealership since they could finally get it in Nov 16, 2022. It has 17,248 miles on it. Am told it needs a new Alternator/Generator and there is no expected timeframe. It is now Jan 20, 2023 and I have been without a car.

From NHTSA, 2021 Q8, 9/10/2021[32]

The contact owns a 2021 Audi Q8. The contact stated while driving 70 MPH, the vehicle shutoff as the electrical problem, see local dealer warning message appeared on the instrument panel. The contact pulled off to the side of the highway and had the vehicle towed to a local dealer. The vehicle remained in the possession of the dealer and had yet to be diagnosed. The manufacturer had yet to be notified of the failure. The vehicle had yet to be repaired. The failure mileage was approximately 3,500.

---

[30] https://www.nhtsa.gov/vehicle/2020/AUDI/Q8/SUV/AWD.

[31] https://www.nhtsa.gov/vehicle/2021/AUDI/Q8/SUV/AWD.

[32] *Id.*

From NHTSA, 2022 Q8, 11/30/2022[33]

I was accelerating on the on ramp on to a major freeway (65mph limit) to merge on to traffic. As I was crossing into the left lane the car suddenly went into an electrical malfunction. All warning lights came on and I was limited to under 2k rpm when pressing on the accelerator pedal. I was forced to coast off to the right shoulder amidst heavy traffic. This was extremely dangerous as i had no power to continue moving except for the speed I had accelerated to and thankfully had enough speed to move away from traffic. The car is currently in service for several weeks. And the culprit Audi says is the 48V hybrid system that causes this shutdown. Please look into this problem as I have found out recently there have been many reports over the last few years of this same issue on similar models. Thank you for your time.

From NHTSA, 2019 A6, 4/8/2023[34]

Message for "electrical system malfunction", then "start stop system malfunction", then "electrical system malfunction stop vehicle safely". Car was immobilized. Was driving on highway.

From NHTSA, 2019 A6, 3/1/2023[35]

Two miles from home all sorts of electrical malfunction warning lights appear. Too many to list here. Then car completely stops and all electricals shut down. This happened in the middle of a very busy three lane 45mph main artery. Stuck in gear, unable to push off side of road. After ten minutes or so of cars zooming around us, it started enough to get off road to safe place. Waited 4 hours in freezing cold for tow truck. Very scary incident for my wife and me, as we are in our 70s. Towed to my local Audi dealer. The problem seems to be with the "Starter Alternator" and is a national problem with 1000s of affected owners. Was told 29 vehicles are ahead of mine for replacement and that it could be weeks before parts are available. One car family and no loaners available and there talking weeks / months to repair.

---

[33]https://www.nhtsa.gov/vehicle/2022/AUDI/AUDI%252520RS%252520Q8/SUV/AWD.

[34] https://www.nhtsa.gov/vehicle/2019/AUDI/A6/4%252520DR/FWD.

[35] *Id.*

From NHTSA, 2019 A6, 2/20/2023[36]

Electrical System Malfunction w/yellow battery icon...stop/start system unavailable. Vehicle deemed unsafe to drive. Towed to dealership, part on worldwide B/O...estimate several month wait for starter/alternator

From NHTSA, 2019 A6, 2/15/2023[37]

Vehicle emitted multiple warnings via dashboard displays. Called dealer's service department and they advised to bring vehicle to dealership as soon as possible. They suspected the car was experiencing pending failure of the generator or alternator, which could result in an immediate loss of all electronics, posing a serious risk while driving. I attempted to drive car the 10-15 miles to the dealership the next morning and all systems failed. Dealer confirmed issue was related to the suspected generator or alternator issue.

From NHTSA, 2019 A6, 2/15/2023[38]

Battery light came on, called the dealer and they said don't drive and towed the car to dealer. They said need to replace Starter Generator C29. They did't have parts, so they keep my car at Audi dealer service shop for about one and hale month. I googled and look like it happened to too many people. Finally they said found the parts and charge me $2902.12. I am really concerned that part is not properly constructed or something, as even in this dealership, they said my car was sixth in one month and may more after me. They are skimming money from bad part.

From NHTSA, 2019 A6, 2/11/2023[39]

I had a failure with the vehicle electrical system malfunction. I had multiple warnings from ABS, Power steering, Adaptive cruise control. I was on the highway doing about 70 when this happened. After about

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

5 mins of driving, everything powered down in the vehicle. From the dashboard to the center instrument panel. Then after that, the car cut off. Lucky I was in the right lane to pull over to the shoulder. Car never started back up. Nervous about what the dealership is going to tell me.

From NHTSA, 2019 A6, 2/8/2023[40]

I suffered a complete failure of the vehicle's electrical system. First, I received a warning that the electrical system malfunctioned. This warning went away after two power cycles. Two days later the warning came back and a warning that the battery level was low. I was driving the vehicle approximately 1 mile on the highway when the warning became progressively dire. First the Adaptive cruise control systems became failing one by one, adaptive lane keep, lane departure etc. Then I got yellow warnings about failures in the transmission and the engine. Finally those errors became dire that I must stop the vehicle. I next lost all electrical screens within 2-3 minutes of the cascading dire warnings just as I was pulling off the highway onto side streets. Within 30 seconds I lost power steering and most braking force. I was able to pull over into a bus stop, but with difficulty. I lost all hazard lights, all vehicle lights. I lost the ability to unlock the doors temporarily but this recovered. I could not turn the car back on, I could just hear the started struggling to turn over. None of the screens in the vehicle worked. No lights or horn worked. Thankfully this happened in the late afternoon while the sun was still out. The extreme danger posed by not having emergency lights, power steering and minimal braking capability made this an extremely scary situation. I was advised by Audi Queens that this was confirmed alternator/generator failure.

From NHTSA, 2019 A6, 2/4/2023[41]

Known generator problem. The entire car shut down when I was on the express way at 5:30 PM rush hour in Chicago. Luckily I was able to get over to a shoulder before the car went completely DEAD . Even the emergency flasher would not work, miracle that we didn't get killed. Can't believe Audi let people drive these cars when many have had this problem

---

[40] *Id.*

[41] *Id.*

From NHTSA, 2019 A6, 11/10/2021[42]

While driving on highway, had complete electrical system failure. Received red message that said "electrical system malfunction". Car went totally black and completely shut down within 2 minutes. I had to navigate 3 lanes to pull over with completely black cockpit after car shut down. Audi service says it's the "starter generator". Service said there is a chance of fire with moisture ingress in the starter generator. Apparently it's a known issue with over 60 units on back order from their supplier Continental (no promise date available). Concerned this is a serious safety issue and will cause somebody to have a crash due to car shutting down and potential for electrical fire.

From NHTSA, 2020 A6, 2/3/2023[43]

I purchased the car new around June 2020 and it currently has just under 26,000 miles on it. Earlier this week while driving the car, an electrical malfunction warning appeared on the dashboard display. The first dealership I contacted did not deem it serious and set me up for an appointment over a month away. The second dealership I called had me tow the car in right away as the thought was my alternator had failed. A call back later that afternoon confirmed the alternator did in fact fail. That dealer also indicated that the wait time for a replacement was several months away. This seems to indicate much larger problems with this part as alternators are fairly common and very necessary components.

From NHTSA, 2020 A6, 1/31/2023[44]

While driving to work, received notification of "Electrical System Malfunction, contact service immediately". I contacted Audi. They advised me to either bring the vehicle in or have it towed. I drove to Audi that afternoon. While driving to the service facility, the warning changed and told me to pull over immediately. As I was close to the

---

[42] *Id.*

[43] https://www.nhtsa.gov/vehicle/2020/AUDI/A6/4%252520DR/FWD.

[44] *Id.*

dealership, I continue to drive and was able to make it to the dealership. I was informed by the service manager that the car could have shut down at any time and I would have lost complete control of steering and brakes. This is apparently a well-known problem with the 48 V generator. It will be a 2-month wait until I can have the generator replaced. Given that the electrical systems could have shut down at any time, this is a safety issue.

From NHTSA, 2020 A6, 12/1/2022[45]

Vehicle reports Electric Malfunction and then suddenly start getting all warnings like all controls (like steering etc) disabled and vehicle stalled in the middle of the road. Had to get it towed and taken to dealership. They do not have a fix for this problem and no estimates on how long it will take to fix the issue and get the car back.

From NHTSA, 2021 A6, 1/17/2023[46]

Multiple warnings indicating to contact dealer (Lane departure, adaptive cruise control, collision avoidance, electrical system, start/stop, etc) then 1 minute later transmission failure and engine failure imminent. After a minute or two my center MMI went blank then my electronic dash went blank, transmission went into neutral and the engine died all within a few seconds. Fortunately I was able to coast to a stop in the center median of an expressway and contacted the dealer. Flatbed towed to dealer who stated most likely the generator between the lithium battery bank and gas engine failed. They have seen several in this year for A6 and A7's with mild hybrid engines. I was lucky to be in low volume traffic as there was no power to indicate to drivers around me that my engine quit and not even turn signals worked. After having car towed to Audi dealer, they proceeded to tell me it was the starter/generator and the part was on back order for two to three months.

---

[45] *Id.*
[46] https://www.nhtsa.gov/vehicle/2021/AUDI/A6/4%252520DR/AWD.

From NHTSA, 2019 A7, 2/8/2023[47]

The alternator malfunctioned and was not available for inspection upon request My safety was put at risk as the car ceased to move while driving on high speeds on the hwy The problem has been reproduced by several other audi owners. This is a widespread issue putting multiple lives at risk The vehicle component has been inspected by the manufacture There were no malfunctions happening prior I was driving on the highway and all of a sudden, all the lights were going off on the car. alot of malfunctioning. first message was electrical system malfunction, then rear spoiler malfunction and the car ceased to begin moving. I had to park it in the merging lane and feared for my safey. I decided to call audi for a jump start. the car started but as soon as the cables were removed the car died again. i had to then call for a tow truck to take the car to the dealership. All this happened while i was cold and stuck in the middle of a busy highway street. I was told by audi this is a widespread issue. they did not provide a loaner car as they said they were out and ive been on the waiting list for the past 3 weeks. They also said the parts were back ordered and i can be looking at 3-6 months without my car. No reinbursement for the car payments either and im limited to a rental for $50 a day max which i would have to pay out of pocket and get reimbursed while paying for the car note as well. This is unacceptable.

From NHTSA, 2019 A7, 1/27/2023[48]

On a late dark night driving back home from supper my wife's low mileage Audi suddenly died on a busy and unlit street (Champions Forest Drive). We had to call an Uber to take us home. We also had to leave the abandoned vehicle overnight. Early the next morning a Harris County Precinct 4 Constable Deputy came to our house inquiring about the status of our abandoned car. An Audi tow truck hauled the car to their North Houston Audi dealership that same early morning where we were told that the problem was due to a defective alternator. They also told us that we would have to wait 3-4 months for repairs. They have, at their small dealership, over 50 cars waiting to be repaired. We were

---

[47] https://www.nhtsa.gov/vehicle/2019/AUDI/A7/4%252520DR/AWD.
[48] *Id.*

also informed there are 40,000 to 50,000 vehicles worldwide with this exact same problem.

From NHTSA, 2019 A7, 1/26/2023[49]

Received an electrical malfunction - please call service warning icon on dash display. In less than one mile, I received cascading sequential warnings - including transmission and steering warnings - please pull over now. I attempted to exit the freeway on the next ramp, on the I10 Freeway in Claremont, CA on the Monte Vista Exit - but the car completely lost all power and electric (dash and all screens were dark) blocking a traffic lane. Was stranded there for over 45 Minutes until AAA/Highway Patrol were able to obtain a tow truck. Car was towed to dealer and found out it is a known issue with the 48V Alternator System in 2019 Model Year Audis. Found out alternator is unavailable due to supply chain issues and car will be out of service for at least 4 weeks! Per research on Audi Forms, this is a known issue and Audi should be recalling these vehicles and performing the KNOWN software update (TSB Software Update 27-22-45 - Version 527) on all 2019-2020 Audi vehicles with this system. I was in fear of being rear-ended and injured - and to find out this should not have happened is very disappointing. Please require Audi to recall these vehicles and update the software so others are NOT put in this same life threatening situation - and then forced to wait until the vehicle can be fixed - currently at least 4 weeks! It has happened to MANY others - just check the Audi Owner Forums on the internet. Thank you for your consideration.

From NHTSA, 2019 A7, 1/19/2023[50]

Starter Generator failure of the 48v Mild hybrid system. This issue is very common, and has a recall on the 2019+ audi a6 (however its because of a risk of electrical fire). Car sends errors to driver as many electrical components begin to fail and fault one by one, steering wheel dynamics shifted while in motion (as steering module failed), air suspension faults occurred. The car inevitably died during operation. Was stuck inside of vehicle, the internal door handles are powered by

---

[49] *Id.*

[50] *Id.*

the 48v system, they are not mechanical latches. Car stalls out when the 48v battery fails. I have had this part replaced on my car, dealership says there are 8 just like it in the past 2 months. Very common issue for Audi's. As more of these find their way on the road, each car magnifies the risks to vehicle owners and other drivers as these issues are becoming more in more common in 3 year old Audi models.

From NHTSA, 2019 A7, 1/13/2023[51]

The electrical malfunction light came on while driving. Then my spoiler malfunction light came on. After that my dash board lit up like a Christmas tree. All kinds of lights came on. My car stopped in the middle of traffic. Had Audi care tow it to a Audi dealership. The SA says it's an alternator issue and there is no eta when the part will be in. They have over 30 cars at each Audi dealership around the city with no recall, or loaners. I may be without a car for a month or more.

From NHTSA, 2019 A7, 12/6/2022[52]

My vehicle had a complete electrical failure, when caused everything to shut down. The engine, door locks, hazards, power steering, e brake, etc. were all inoperable. On Sunday, Nov 20th, I received a yellow warning light that said, "electrical system malfunction, please contact service." I parked the car and called the dealer the following morning to ask how sever this warning was (could I drive the car or does this require a tow?). They advised me to bring the car in. While heading to the dealership, I received several other warning lights in rapid succession: electrical system malfunction, safely stop vehicle; parking aid malfunction, transmission malfunction, rear spoiler malfunction, and others. The vehicle died about 30 seconds after these warning lights appeared. I was on the highway in morning rush hour traffic at the time, but I was in the right lane and was able to coast to an off-ramp and park on the side of the road. With little to no control over the car, I could have easily been in accident. The dealer has confirmed that the cause was the start-stop generator, which caused a fault in the Mild Hybrid system and 48V battery. The car is still "bricked" and located at Audi

---

[51] *Id.*

[52] *Id.*

New Orleans. It is available for inspection if needed (parts are not expected anytime soon).

From NHTSA, 2019 A7, 11/22/2022[53]

I received a warning and multiple dash lights indicating electrical malfunction. Upon coming to a red stoplight, the car died and would not restart. After the light turned green, I was nearly rear-ended by a large truck traveling at ~50 mph but luckily it was able to swerve out of the way. After about 10 minutes, the car restarted but the warning messages persisted. I drove immediately to the dealership for service where they diagnosed an issue with the mild hybrid 48v battery system and starter/generator/alternator. There are no parts available and it is sitting at the dealership along with at least 12 similar vehicles with the same issue. This needs to be recalled immediately as it is a major safety issue as I was nearly in a major accident due to the issue.

From NHTSA, 2019 A8, 2/17/2022[54]

Vehicle engine would suddenly stop working, warning, "drive system malfunction: stop vehicle safely." It has happened 3 times within 3 days in the middle of the intersection. Dealers wouldn't take this issue seriously and they asked me to make an appointment online, which is scheduled to be 1 month away. The issue almost caused an accident twice. Adaptive cruise is also malfunctioning, engine random misfire, sunroof rattle, etc. This car is just so problematic it only has 20,000 miles on it and had scheduled maintenance performed just a month back.

From NHTSA, 2019 A8, 4/7/2023[55]

Hello, On April 6th, 2023, at 12 pm, my car experienced a electrical malfunction within the Start/Stop system, which didn't posed an immediate threat to my life. Later that day, the car stalled on me while driving, causing a highly dangerous situation on a busy street during peak traffic hours. Multiple error codes appeared, and the transmission

---

[53] *Id.*
[54] https://www.nhtsa.gov/vehicle/2019/AUDI/A8%252520LWB/4%252520DR/AD
[55] *Id.*

failed, leaving me in a perilous position. It is alarming that AUDI is aware of this life-threatening issue, yet no recall has been issued thus far. I urge NHTSA to take swift action and hold AUDI accountable for this critical failure, which endangers not only my life but the lives of others on the road. Please refer to the link below for evidence supporting my claim. The issue is widespread, affecting various models of Audi, including the 2019 A6, A7, and A8. https://www.audiworld.com/forums/a7-224/2019-a6-a7-a8-electrical-failures-3037487/

From NHTSA, 2019 A8, 1/26/2023[56]

Alternator/Start stop generator is bad. Car stopped dead in the intersection.

From NHTSA, 2019 A8, 1/25/2023[57]

The contact owns a 2019 Audi 8. The contact stated while driving approximately 40 MPH, the message "Electrical Malfunction" was suddenly displayed before the vehicle lost motive power and stalled. The vehicle failed to restart. The vehicle was towed to the local dealer who diagnosed that the alternator was faulty and needed to be replaced. The manufacturer was notified of the failure and informed the contact that the parts needed to repair the vehicle were not available. The failure mileage was 45,000.

From NHTSA, 2019 A8, 1/19/2023[58]

Message appeared on display Jan 7 2023: "Electrical system: Malfunction! Please contact service" The trunk lid opened while I was driving, the a/c quit (I am in Key West!), the auto start/stop quit. I had heard of many other Audi owners whose car just quit, so I scooted home and parked. I had it towed to Coral Gables FL at my expense, and the dealer told me it was an alternator problem that needed to be replaced. None available in the US, could be months before it's repaired. Car is 2019 Audi A8 with 42,000 miles.

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

From NHTSA, 2020 A8, 11/26/2022[59]

Start system malfunction causes the car to randomly lose ALL power and roll back when at a stopped, causing the car to be disabled and unable to start again. Faults indicate a failure of the 48V belt driven starter generator. Parts to repair defect are severely back ordered, taking months to obtain.

From AudiWorld, 2019 Q8, NJSRST, 2/9/2021[60]

So today I received an error "Electric System Malfunction" message on the dash. Drone fine for the 5 minutes left in my drive. I turn it off, come back in an hour and the light is still there. There was a check engine light up top and the battery light at the bottom. After about 5 minutes of driving, I get a random rear light error message. Then, I get a system malfunction message, so a red warning light is on. Starting to look like Christmas again lol. At this point I started heading to a local dealer. But I didn't make it. I noticed odd things like the auto start/stop not enabled. Then the speed sign sensor wasnt working, the car didn't have much power, like limp mode, then the lane departure went, then the traction control system went, then the transmission something went. Whole ****ing electrical sent went. It told me to pull over slowly. I felt and heard a loud clunk as well. Of course I've pulled over by now. Called a local dealer, explained the situation, then I called Audi roadside to pick up the car. Tried to turn on the car when the tow truck was there, but the lights were doing some weird stuff. It rolled my driver side window down ??? Wtf. Anyways, tow guy was very cool and got it up on the truck. It's at the dealer and hope to hear from them in the morning.

I've looked into the messages and I'm thinking it's related to the 48 volt hybrid system in these cars. I think it's worthless that they would implement this kind of technology in these cars. So unnecessary and more gimmicky.

---

[59] https://www.nhtsa.gov/vehicle/2020/AUDI/A8.
[60] https://www.audiworld.com/forums/audi-q8-227/electric-system-malfunction-3012848/#post25770800.

just wanted to share my experience with you guys and I'll keep you updated.

From AudiWorld, 2019 Q8, WST, 10/4/2021[61]

[2021 Q8 Prestige with towing and adaptive].
I had a similar experience which left my wife and I on the side of the highway for 10 hours over two days. The beat I could explain it was the car "lost it's darn mind". It would throw an amazing g and random array of errors and subsystem failures from for left front radar, to passenger air bag, to ACC, but ultimately it decided drive system error and went limp mode. This left me trapped in the middle of a bridge on an Interstate. Running ODBC I Shaw all sorts of communication errors like "implausible data on etherbuss 2". Dealership assured me it just needed a software update and sent me back out on the road. Got 70 miles before I was on the side again. They are now telling me my trailer tongue weight was too much, but that is an unsatisfying explanation on why the car would so thoroughly freak out. I was not towing the second time it happened. Also, my trailer is well under the listed gross weight spec, although I can't seem to find a tongue weight rating listed.

anyway, my issue is not resolved as dealership can't recreate it on their time.

From AudiWorld, 2019 Q8, Q8Jake, 2/21/2022[62]

The "Electrical System Malfunction" happened to me as well. And as soon as this comes up. Go to a dealership immediately DO NOT WAIT. In my case, it was the alternator that went bad ($3400). This happened on a Saturday and I went to the dealership on a Monday. That caused the 48v battery to die completely and once that happens it won't charge back up this battery ($2000) had to be replaced. Total cost with tax was about $7600. I have a 19 Q8 with 60k miles.

---

[61] *Id.*

[62] *Id.*

From AudiWorld, 2019 Q8, allstar948, 10/8/2022[63]

Yep, just happened to me last Monday in my 2019 Q8 with 63,000 KM
(not even miles)! One warning came up, then later everything shut
down and I was stranded on the road. Towed to the dealership and was
told it is the alternator - a "known" problem with Audi - and that they
would need about 3-4 weeks to get the part from Germany. The Service
Advisor told me in confidence that they are very aware of this issue and
it is common. I'm quite disappointed but will be pushing to make sure
that this is a warranty covered item.

From AudiWorld, 2019 Q8, Steve Du, 11/17/2022[64]

Just had my 19 Q8 with 52k experience the same issue on Monday.

Had to wait 24 hours to get it towed to the dealer, while getting my CC
stolen with shady Out-of-network towing company because they can't
find anyone in network for 24 hours. Not to mention spent almost 6
hours on the phones to sort the towing issue out.

Just called the dealer, was told there are 10 cars in line that has the same
issue. No loaner of course.

When asked if they have an estimation, was told they had someone
since September and was JUST completed this week. Of course the 48v
Generator is on backorder until God knows when.

Now the question is, what can we do if our car is in the shop waiting on
parts for more than 1 month, with no loaners available, do we have
rights as affected consumers?

From AudiWorld, 2019 A7, AndyA766, 11/14/2022[65]

Just had the alternator fail on my 2019 A7 (41,000 kms) with all the
same error messages popping up, one after another that others

---

[63] *Id.*

[64] *Id.*

[65] https://www.audiworld.com/forums/a7-224/2019-a6-a7-a8-electrical-failures-3037487/page8/.

experienced prior to complete shutdown of the car on a busy highway during rush hour. Called Audi Roadside and they had someone come within an hour. The tow driver couldn't figure out how to get the car into neutral, so he called another, who came with a non-flatbed trunk and this one guy refused to tow, since he thought he might damage the vehicle. He then called for another who was smart enough to jump the car to get into neutral. After a total of 4.5 hours of waiting at the side of the road to get towed, we finally made it to the dealership. As suspected, they said the alternator had failed and it would take 3-4 weeks to get the part. Interestingly enough, the service tech mentioned that they've seen a lot of A7's in the 2019-2020 range coming in for this issue and said other models were affected as well. At least they were honest about the issue and good thing I still have warranty, as I've only been driving the car for a few months. I'll get my manufacture date once it's out of the shop.

From AudiWorld, 2019 A6, jcdb4, 11/15/2022[66]

My 2019 Audi A6 3.0 died just over the GW bridge yesterday, luckily I could pull over to right lane (no shoulder available). Had to call 911 to get assistance. Tried multiple times to start with no success. 20 minutes later when Trooper arrived it started and was able to get off death alley, (nothing like seeing cars come up behind you at 60 mph and move over at last minute.) Was towed to dealer in Englewood via Audi.

Long story short is it was alternator. They quoted three weeks for the part and mentioned it is a problem for a whole slew of 2019 vehicles and thinks Audi needs to give some relief. Luckily when I purchased it (CPO) it came with unlimited miles till 1/24 so it is covered. For those who are not it is a bitter 4K pill to swallow..

I rented car and drove back down to home in NC and will now have to come back up once it is fixed. Getting in touch with Audi to see if trip interruption clause can be invoked to cover rental cost.

---

[66] https://www.audiworld.com/forums/a7-224/2019-a6-a7-a8-electrical-failures-3037487/page9/

This is the second time Audi has stranded me 300+ miles from home. First was with 2008 S4 and the DSG gave it up, mechatronics unit, which cost 2k and got a notice a while back of a class action lawsuit against Audi due to its high failure rate.

Will most likely drive this to January of 24 and sell, not sure if I can stomach the Audi Product Line anymore due to these kinds of issues. Had transmission issues with 2013 A6 as well as the exhaust disconnected from the engine twice. Go figure.

From AudiWorld, 2019 A6, Yinzer Ray, 11/18/2022[67]

My 2019 A6 Premium Plus 3.0T displayed the "electrical system malfunction, contact service" message in conjunction with the yellow battery icon, at 27,500 miles. (Date of manufacture is 11/18) I drove it for about 10 more miles to an Audi dealer, where they confirmed the starter-generator failure. The service advisor said the battery would have been fried had it been driven for another day. it took 20 days for the parts to arrive and it appears to be as good as new. I asked if they're seeing a lot of these at that dealership, and the advisor replied they have had 10 or 11 within the past month, said my parts were available sooner than expected as an out-of-state vehicle had been towed-in, but was towed away before the parts arrived. I saw the service paperwork with charges adding up to ~$4,500, all covered under warranty, fortunately. I asked the advisor if I can expect this to recur in another 3-1/2 years, but he said the problem part had been redesigned to supposedly correct the problem. We shall see.

From AudiWorld, 2019 A6, Scefire, 12/3/2022[68]

I had the same issue where the car gave an "electrical system malfunction" warning and said call dealership. I was a few minutes from the dealership so I went there and they acted if they never heard this before and needed to diagnose it. I read these posts and realized I would probably not make it back there so I did not drive the car until it was time to return for service and asked for a loaner car. The car

---

[67] https://www.audiworld.com/forums/a7-224/2019-a6-a7-a8-electrical-failures-3037487/page10/.

[68] https://www.audiworld.com/forums/a7-224/2019-a6-a7-a8-electrical-failures-3037487/page12/.

absolutely did not make it back to the dealership before all electrical systems failed and the transmission failure warning as well. My car has been in service for two weeks and they said the alternator needs replacement but it is back ordered. My warranty will expire in about 4 months so reading these posts makes me believe my warranty will expire while my car is in the shop. I'm with everyone else, Audi needs to own this issue and recall these vehicles. Mine has 30k miles on it.

Charles,
San Antonio, TX

From AudiWorld, 2019 A7, PaulGinAZ, 12/7/2022[69]

I just found this thread via a quick google search and I thought I would chime in.

I purchased my 2019 A7 Prestige about three months ago and as of this past weekend, it started showing the same signs as everyone else. I called my dealer and they asked me to bring the car in. It ran for about 8 of the 14 mile journey and it died mid-flight.. same A/C system shutoff, spoiler deployment and the like. My car is an August 14, 2019 production date with 25,295 miles when it broke down.

My dealership (Audi Chandler) has been great so far and has me in an Audi loaner. My service advisor has been all over me with updates, and I think it's going to be a while before the appropriate part or parts come in according to her.

53.    As reproduced above, Defendants also had knowledge of the numerous complaints to NHTSA and on consumer forums dedicated to Audi ownership, all of which Defendants routinely monitor as part of Defendants' quality control, consumer satisfaction, and vehicle performance monitoring processes. Numerous

---

[69] https://www.audiworld.com/forums/a7-224/2019-a6-a7-a8-electrical-failures-3037487/page13/.

consumer complaints reveal the extent of danger posed by the manifestation of the defect.

54.    Defendants also became aware of the defect through their rigorous pre-sale testing, which replicates actual consumer use of the Class Vehicles. Through its pre-sale testing of Vehicles, which includes actual road testing over varying intervals of time, the numerous issues complained of concerning the starter-generator and/or alternator necessarily revealed themselves to Defendants, placing Defendants on notice of the defect. Considering many owners and lessees experience the defect within a few thousand miles of use, Defendants were necessarily alerted to the presence of the defect through their pre-sale testing.

55.    Defendants' knowledge of the defect is also supported by a series of TSBs they issued regarding the defect. For instance, on March 2, 2022, Defendants issued TSB 27 22 41 2058831/4, acknowledging the issues with Class Vehicles and the potential need to replace parts, as well as performing a software update to fix the problems.[70] Despite publishing TSBs and directions to address the problems in Class Vehicles, Defendants failed to issue a recall and owners and lessees of Class Vehicles continue to experience the defect.

56.    Because of Defendants' actions, Class Vehicle owners and lessees have suffered damages in the form of loss of use of their Class Vehicles for extended

---

[70] https://static.nhtsa.gov/odi/tsbs/2022/MC-10208897-0001.pdf.

periods of time while their Vehicles are inoperable and/or waiting for replacements

parts on backorder; out of pocket costs associated with repairs, replacements, and

labor; lost time; and expenses involved in contacting Defendants and waiting at

dealerships.

## **CLASS ALLEGATIONS**

57.     This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a)

and (b), on behalf of the class(es) defined as follows:

> **Nationwide Class**
> All persons in the United States that purchased or leased a Class Vehicle,
> including 2018-2023 Audi A6, A7, A8, and Q7 vehicles; 2018 and 2020-2023
> Audi S6, S7, S8, and R8 vehicles; 2018 and 2021-2023 Audi RS 7 vehicles;
> 2019-2023 Audi Q8 vehicles; 2020-2023 Audi A6 allroad, SQ7, SQ8, and RS
> Q8 vehicles; 2021-2023 Audi A7 e quattro vehicles; and 2020-2021 Audi A8
> e quattro vehicles, for end use and not for resale.

58.     In the alternative, Plaintiffs seek certification of the following classes:

> **California Class**
> All persons in the state of California that purchased or leased a Class Vehicle,
> including 2018-2023 Audi A6, A7, A8, and Q7 vehicles; 2018 and 2020-2023
> Audi S6, S7, S8, and R8 vehicles; 2018 and 2021-2023 Audi RS 7 vehicles;
> 2019-2023 Audi Q8 vehicles; 2020-2023 Audi A6 allroad, SQ7, SQ8, and RS
> Q8 vehicles; 2021-2023 Audi A7 e quattro vehicles; and 2020-2021 Audi A8
> e quattro vehicles, for end use and not for resale.

> **New York Class**
> All persons in the state of New York that purchased or leased a Class Vehicle,
> including 2018-2023 Audi A6, A7, A8, and Q7 vehicles; 2018 and 2020-2023
> Audi S6, S7, S8, and R8 vehicles; 2018 and 2021-2023 Audi RS 7 vehicles;
> 2019-2023 Audi Q8 vehicles; 2020-2023 Audi A6 allroad, SQ7, SQ8, and RS
> Q8 vehicles; 2021-2023 Audi A7 e quattro vehicles; and 2020-2021 Audi A8 e
> quattro vehicles, for end use and not for resale.

59.     Excluded from the classes are: (i) Defendants and their officers and directors, agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all class members who timely and validly request exclusion from the Class, and (iii) the Judge presiding over this action. Plaintiffs reserve the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

60.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

61.     **Numerosity:** The class members are so numerous that joinder of all class members in a single proceeding would be impracticable. While the exact number and identities of individual class members are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that tens or hundreds of thousands of Class Vehicles affected by the defect and issues alleged herein have been sold and leased nationwide.

62.     **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all class members and predominate

over questions affecting only individual class members. Such common questions of law or fact include, *inter alia*:

a.    whether Defendants engaged in the conduct alleged herein;

b.    whether the Class Vehicles are defective as alleged herein and contain the alleged defect;

c.    whether Defendants placed Class Vehicles into the stream of commerce in the United States with knowledge of the defect as described herein and the failure of starter generator and/or alternator in the Vehicles;

d.    whether Defendants had pre-sale knowledge of the defect;

e.    whether Defendants omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

f.    whether Defendants' made omissions and misrepresentations regarding the Class Vehicles and whether this was likely to mislead a reasonable consumer;

g.    whether Defendants breached warranties with Plaintiffs and the other class members when they produced, distributed, and sold the Class Vehicles with a defect;

h.    whether Plaintiffs' and the other class members' Class Vehicles were worth less than as represented as a result of the conduct

alleged herein;

i.      whether Plaintiffs and the other class members have been damaged and, if so, the extent of such damages; and

j.      whether Plaintiffs and the other class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

63.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

64.    **Typicality:** Plaintiffs' claims are typical of the claims of the other class members because, among other things, Plaintiffs and the other class members were injured through the substantially uniform misconduct described above. Like Plaintiffs, class members also purchased or leased Class Vehicles equipped with defective electricals systems and components. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other class members, and no defense is available to Defendants that are unique to Plaintiffs. The same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the

claims of all class members. Plaintiffs and all class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct in selling/leasing and failing to remedy the Class Vehicles with defective electrical systems.

65. **Adequacy:** Plaintiffs are adequate class representatives because they will fairly represent the interests of the class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and automobile defect class action cases. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the class they represent and have the resources to do so. Neither Plaintiffs nor their counsel have interests adverse or antagonistic to those of the class.

66. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for class members to individually seek redress for Defendants' wrongful conduct. Even if class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would

also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

67.     Upon information and belief, class members can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Defendants maintain regarding their sales and leases of Class Vehicles.

68.     Defendants have acted, and refuse to act, on grounds generally applicable to the class, thereby making appropriate final equitable relief with respect to the class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### COMMON LAW FRAUD/FRAUDULENT OMISSION
#### (On Behalf of Plaintiffs and the State Classes)

69.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

70.     This claim is brought by Plaintiffs on behalf of the state classes under the laws of their respective home states.

71.     Defendants actively, intentionally, and knowingly concealed, suppressed, and/or omitted material facts including the existence of the defect and

the standard, quality, or grade of the Vehicles and the fact that the Vehicles contain a defect and corresponding safety risk, with the intent that Plaintiffs and class rely on Defendants' omissions. As a direct result of the Defendants' fraudulent conduct, as alleged herein, Plaintiffs and members of the class have suffered actual damages.

72.    Defendants knew at the time of sale or lease and thereafter that the Vehicles contained the defect, omitted material information about the safety of the Vehicles, and actively concealed the defect and never intended to adequately and permanently repair the defect during the warranty periods. To date, Defendants have not provided Plaintiffs and members of the class with an adequate repair or remedy for the defect.

73.    Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent defect. A reasonable consumer would have expected that the alternators and electrical systems in the Class Vehicles would not be defective and pose a serious safety risk.

74.    The facts concealed or not disclosed by Defendants to Plaintiffs and class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price.

75.    Defendants had a duty to disclose the true performance of the Class

Vehicles because knowledge of the defect and its details were known and/or accessible only to Defendants; Defendants had superior and exclusive knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable by, Plaintiffs and class members. Defendants also had a duty to disclose because they made many general affirmative representations about the qualities of their vehicles, including references as to safety, and general operability, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual performance of their vehicles.

76.     Had Plaintiffs and the class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

77.     As a result, Plaintiffs and the other class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defects and all the resulting problems.

78.     These misrepresentations omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and class members rely upon them.

79.     Plaintiffs and class members reasonably relied on Defendants' misrepresentations and omissions and suffered damages as a result. To the extent

that Defendants' conduct was willful, oppressive or malicious, Plaintiffs and class members are entitled to an award of punitive damages.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiffs and the Classes)

80.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

81.    This claim is brought by Plaintiffs on behalf of the nationwide class, or in the alternative, the state classes under the laws of their respective states.

82.    Defendants are a "merchant" as defined under the Uniform Commercial Code ("UCC").

83.    The Class Vehicles are "goods" as defined under the UCC.

84.    Defendants expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Defendants warranted attributes and qualities of the electrical systems in the Class Vehicles, including with respect to performance, quality, operability, convenience, and safety.

85.    Defendants also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the applicable warranty periods.

86.    Defendants breached their warranties by selling to Plaintiffs and the class members the Class Vehicles with known issues affecting the powertrain, the

electrical system and components, including but not limited to the starter, and alternator, which are not of high quality, and which are predisposed to fail, presenting an unreasonable safety risk. Defendants also breached their warranty by failing to provide an adequate repair when Plaintiffs and class members presented their Class Vehicles to authorized dealers following manifestation of the defect.

87.    These warranties formed the basis of the bargain that was reached when Plaintiffs and other class members purchased or leased their Class Vehicles equipped with the defect and related issues.

88.    As alleged herein, Plaintiffs and class members experienced the defect within the warranty period. Despite the existence of express warranties (including but not limited to Audi's New Vehicle Limited Warranty), Defendants failed to inform Plaintiffs and class members that the Class Vehicles are defective and failed to completely fix or eliminate the defect upon presentment of their Vehicles to Defendants' dealerships after the defect manifested.

89.    As a result of Defendants' actions, Plaintiffs and class members have suffered economic damages including, but not limited to, costly repairs, loss of vehicle use, diminished value, substantial loss in value and resale value of the vehicles, and other related damages.

90.    Defendants were provided notice of the issues complained of herein by numerous consumer complaints filed against it, and the instant lawsuit, within a

reasonable amount of time.

91.    Plaintiffs and the class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

### COUNT III
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
#### (On Behalf of Plaintiffs and the Classes)

92.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93.    This claim is brought by Plaintiffs on behalf of the nationwide class, or in the alternative, the state classes under the laws of their respective states.

94.    Defendants are a "merchant" as defined under the UCC.

95.    The Class Vehicles are "goods" as defined under the UCC.

96.    A warranty that the Class Vehicles were in merchantable quality and condition is implied by law in transactions for the purchase and lease of Class Vehicles. Defendants impliedly warranted that the Class Vehicles were of good and merchantable condition and quality, fit for their ordinary intended use, including with respect to safety, reliability, operability, and substantial freedom from defects.

97.    The Class Vehicles, when sold and leased, and at all times, thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that the

48V electrical system and alternator—key components to the operation of Class Vehicles—are prone to fail due to a common defect. The defect renders that Class Vehicles unmerchantable, as they are unreliable, unsafe, partially or fully inoperable, and not substantially free from defects.

98.     Defendants were provided notice of the issues complained of herein by numerous complaints filed against them, and the filing of the instant lawsuit, within a reasonable amount of time.

99.     Plaintiffs and the other class members have had sufficient direct dealings with either Defendants or their agents (e.g., dealerships and technical support) to establish privity of contract between Defendants on one hand, and Plaintiffs and each of the class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the class members are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

100.   As a direct and proximate result of the breach of said warranties, Plaintiffs and class members were injured, and are entitled to damages.

## COUNT IV
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (On Behalf of Plaintiff Sanchez and the New York Class)

101.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

102.   Plaintiff Sanchez brings this claim on behalf of the New York Class under New York Law.

103.   New York General Business Law § 349 states, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

104.   Defendants engaged in "business," "trade," or "commerce" within the meaning of N.Y. Gen. Bus. Law § 349(a).

105.   Plaintiff Sanchez is a "person" within the meaning of N.Y. Gen. Bus. Law § 349(h).

106.   Defendants' sale of the Vehicles, while omitting or concealing the defect is a "deceptive act or practice" under N.Y. Gen. Bus. Law § 349.

107.   Had Plaintiff and the other Class members been aware of the omitted and concealed facts, i.e., that the Vehicles they purchased and leased were defective, Plaintiff and the other New York Class members would not have purchased and leased the Vehicles or would have paid significantly less for them than they actually paid.

108.   Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff Sanchez seeks damages on behalf of himself and the New York Class in the amount of the greater of actual damages or $50 for each violation of N.Y. Gen. Bus. Law § 349. Because Defendants' conduct was committed willfully and knowingly, Plaintiff and the other New York Class members are entitled to recover up to three times their actual damages up to $1,000.

109.   Plaintiff also seeks equitable relief, including an injunction, as the court deems necessary and proper.

### COUNT V
### VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
### Cal. Civ. Code § 1750, *et seq*. ("CLRA")
### (On Behalf of Plaintiff Reis and the California Class)

110.   Plaintiff Reis incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

111.   This claim is brought by Plaintiff Reis on behalf of the California class.

112.   Defendants are a "person" under Cal. Civ. Code § 1761(c).

113.   Plaintiff Reis is a "consumer" as defined by Cal. Civ. Code § 1761(d).

114.   Defendants' conduct, as described herein, in misrepresenting the characteristics, qualities, benefits, and capabilities of the Vehicles, or omitting material information, violates the CLRA. Specifically, Defendants violated the CLRA by omitting material facts and failing to disclose a known defect in its Vehicles, engaging in the following practices proscribed by California Civil Code

Section 1770 in transactions that were intended to result in, and did result in the sale

or lease of the Vehicles:

- representing that the Class Vehicles had characteristics, benefits, or uses that they did not have (that the Class Vehicles were free of defects when in fact they were not, instead having the defect described above);

- representing that the Class Vehicles were of a particular standard, quality, and/or grade when they were of another (that the Class Vehicles were free of defects when in fact they were not, instead having the defect described above);

- advertising the Class Vehicles with an intent not to sell them as advertised (advertising the Class Vehicles' safety and reliability when they were not because they had the defect described above);

- representing that the Class Vehicles conferred or involved rights, remedies, or obligations that they did not have (that the Class Vehicles were safe and reliable when in fact they were not because they had the defect described above); and

- representing that the Class Vehicles were supplied in accordance with previous representations when they were not (that the Class Vehicles were safe and reliable when in fact they were not because they had the defect described above).

115.   Defendants violated the CLRA by selling and leasing Vehicles with a

known defect that Defendants knew were incapable of performing as advertised,

unable to deliver the benefits, qualities, and characteristics described in

advertisements and promotional materials. Defendants omitted from Plaintiff Reis

and other Class members the material fact that Vehicles were sold with a defect.

Defendants omitted the fact that the defective electrical systems posed a serious risk

to the safety of drivers, passengers, and the public. These are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

116.   Defendants knew, at the time it sold the Vehicles, of the material fact that the Vehicles were equipped with the defect in the ways described above, and that the defect substantially diminished the quality, performance, safety, and reliability of Plaintiff's and other Class members' Vehicles. Through internal pre-sale testing procedures customarily conducted by Defendants, they learned of the defect. Further, as described above, Defendants learned about the defect from the deluge of consumer complaints that came pouring in after the Vehicles were introduced to the market, due to complaints to NHTSA, and through warranty claims and other aggregated dealership data. Defendants' conduct in selling the defective Vehicles and omitting information about the defect was fraudulent, wanton, and malicious.

117.   Defendants' unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff Reis's and other Class members suffering actual damage on account of receiving a car that lacked the performance that Defendants represented the Vehicles to have and contained the defect alleged herein.

118.   Plaintiff Reis and the other Class members paid for a car that was supposed to meet certain specifications. When they received a Vehicle that did not conform to these specifications and fell below the standards set by and described in

Defendants' representations, Plaintiff Reis and the other Class members were damaged on account of receiving a car worth less than as represented. Plaintiff Reis and the other Class members suffered diminution in the value of Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

119.    Pursuant to section 1782 of the CLRA, Plaintiff Reis notified Defendants in writing by certified mail of the particular violations of section 1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.

120.    Plaintiff Reis does not currently seek damages by this claim under the CLRA. If Defendants do not respond to Plaintiff Reis's notice and fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of Plaintiff Reis's notice pursuant to section 1782 of the Act, Plaintiffs will seek actual, punitive, and statutory damages, costs, expenses, and attorneys' fees.

121.    Pursuant to California Civil Code section 1782(d), Plaintiff Reis seeks a Court order enjoining the above-described wrongful acts and practices of

Defendants, ordering Defendants to extend repair and replacement remedies to all Class members in California.

122.   Pursuant to section 1780(d) of the CLRA, attached hereto is the affidavit showing that this action has been commenced in the proper forum.

**COUNT VI**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")**
**(On Behalf of Plaintiff Reis and the California Class)**

123.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

124.   This claim is brought by all Plaintiffs and the Nationwide Class or, in the alternative, by Plaintiff Reis on behalf of the California class.

125.   The Unfair Competition Law ("UCL") prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendants committed "unlawful" business practices by, among other things, making representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code sections 1572, 1573, 1709, 1711, 1770(a)(5), (6), (7), (9), and (16), and Business & Professions Code sections 17200, *et seq.*, 17500, *et seq.*, and the common law.

126.   In the course of conducting business, Defendants committed "unfair" business practices by, among other things, misrepresenting and omitting material facts regarding the characteristics, capabilities, and benefits of the Vehicles. There

is no societal benefit from such false and misleading representations and omissions, only harm. While Plaintiffs and other Class members were harmed by this conduct, Defendants were unjustly enriched. As a result, Defendants' conduct is "unfair" as it has offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

127.   The UCL also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendants committed "fraudulent business act[s] or practices" by among other things, prominently making the representations (which also constitute advertising within the meaning of section 17200) and omissions of material facts regarding the safety, characteristics, and production quality of the Vehicles.

128.   Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading, and likely to deceive the consuming public within the meaning of the UCL.

129.   Plaintiffs were deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. Plaintiffs suffered injury in fact and lost money as a result of purchasing the defective Vehicles by paying more than they should have and expending time, effort, and money to attempt to repair their Vehicles, and incurring other consequential inconvenience,

aggravation, damages, and loss of money and time.

130.   Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

131.   Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution from Defendants of all monies obtained from Plaintiffs and the other Class members collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code section 17203.

## COUNT VII
## VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES
### Cal. Civ. Code §§ 1791.2 and 1793.2(d)
### (On Behalf of Plaintiff Reis and the California Class)

132.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

133.   Plaintiff Reis brings this claim on behalf of the California Class under California law.

134.   The Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

135.   Plaintiff Reis and California Class members who purchased or leased the Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

136.   Defendants are a "manufacturer" of the Vehicles within the meaning of Cal. Civ. Code § 1791(j).

137.   California Civil Code § 1791.2(a) states:

"Express warranty" means: (1) A written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance; . . . .

138.   Defendants provided express warranties to Plaintiff Reis and California Class members regarding Vehicles within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, including that the electrical system would function properly as discussed *supra*.

139.   Defendants breached the express warranty by selling and leasing Vehicles equipped with the defect. Furthermore, Defendants breached the express warranty by refusing to permanently and adequately remedy the defect, which requires repair or replacement, within the applicable warranty period by providing free repairs or replacements in a timely manner. Additionally, Defendants failed to promptly replace or buy back Class Vehicles from Plaintiff Reis and California Class members.

140.   As a direct and legal result of Defendants' breaches of its express warranty, Plaintiff Reis and California Class members received goods with a diminished value due to the defect, and have been injured by the diminished value, diagnostic and repair costs, and loss of vehicle use.

141.   Under Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff Reis and California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Vehicles, or the overpayment or diminution in value of their Vehicles.

142.   Under Cal. Civ. Code § 1794, Plaintiff Reis and California Class members are entitled to costs and attorneys' fees.

**COUNT VIII**
**VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF IMPLIED WARRANTIES**
**Cal. Civ. Code §§ 1791.1 and 1792**
**(On Behalf of Plaintiff Reis and the California Class)**

143.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

144.   Plaintiff Reis brings this claim on behalf of the California Class under California law.

145.   The Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

146.   Defendants are a "manufacturer" of the Vehicles within the meaning of Cal. Civ. Code § 1791(j).

147.   Defendants impliedly warranted to Plaintiff Reis and Class members that the Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792. However, the Vehicles do not have the quality that a buyer would reasonably expect.

148.   California Civil Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

a.   Pass without objection in the trade under the contract description.

b.   Are fit for the ordinary purposes for which such goods are used.

c.   Are adequately contained, packaged, and labeled.

d.   Conform to the promises or affirmations of fact made on the container or label.

149.   The Class Vehicles would not pass without objection in the trade of passenger vehicle sales because they are equipped with a defect that may cause sudden loss of power in Vehicles without any regard to the speed of the Vehicle or traffic conditions. The defect means that the Class Vehicles do not meet the promises and/or affirmations made by Defendants regarding the Vehicles. The defect also renders the Vehicles unsafe, and thus, not fit for ordinary purposes.

150.   The Class Vehicles are not adequately labeled because the labeling fails to disclose the defect.

151.   Defendants breached the implied warranty of merchantability by selling and leasing Vehicles equipped with the defect. Furthermore, the defect has prevented Plaintiff Reis and California Class members from receiving the benefit of their bargain and caused the Vehicles to diminish in value.

152.   As a direct and legal result of Defendants' breach of the implied warranty of merchantability, Plaintiff Reis and California Class members received goods with a dangerous condition that substantially impairs their value and use.

153.   Plaintiff Reis and California Class members have been damaged as a result of the diminished value of the Vehicles.

154.   Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff Reis and California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Vehicles, or the overpayment or diminution in value of their Vehicles.

155.   Under Cal. Civ. Code § 1794, Plaintiff Reis and the California Class members are entitled to costs and attorneys' fees.

**COUNT IX**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL")**
**(On Behalf of Plaintiff Reis and the California Class)**

156.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

157.   Plaintiff Reis brings this claim on behalf of the California Class under California law.

158.   Plaintiff Reis, California Class members, and Defendants are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

159.   California's FAL prohibits false advertising. Cal. Bus. & Prof. Code § 17500.

160.   In the course of its business, through its agents, employees, and/or subsidiaries, Defendants violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Vehicles.

161.   Defendants engaged in untrue and misleading advertising prohibited by Cal. Bus. & Prof. Code § 17500 by misrepresenting Class Vehicles as being safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the defect in the Vehicles.

162.   Defendants made, or caused to be made, and disseminated throughout California advertising, marketing, and other publications containing

71

numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff Reis and California Class members.

163.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppression of material facts, had a tendency and capacity to mislead and create a false impression in consumers, and were likely to—and did in fact—deceive reasonable consumers, including Plaintiff Reis and California Class members, about the true safety and reliability of the Vehicles, and the quality and true value of the Vehicles.

164.    Defendants' scheme and concealment of the defect and true characteristics of the Vehicles were material to Plaintiff Reis and California Class members, as Defendants intended. Had Plaintiff Reis and California Class members known the truth, they would not have purchased or leased the Vehicles, or would have paid significantly less for them.

165.    Plaintiff Reis and California Class members relied on Defendants and had no way of discerning that those representations were false and misleading, or otherwise learning the facts Defendants had concealed or failed to disclose. Plaintiff Reis and California Class members did not, and could not, unravel Defendants' deception on their own.

166.   Defendants had an ongoing duty to Plaintiff Reis and the California Class members to refrain from unfair or deceptive practices under the California FAL in the course of its business. Defendants owed them a duty to disclose all material facts concerning the defect in the Class Vehicles because Defendants possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff Reis and California Class members, and/or Defendants made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

167.   Plaintiff Reis and California Class members suffered ascertainable losses and actual damages as a direct and legal result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

168.   Defendants' violations present a continuing risk to Plaintiff Reis and California Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

169.   Plaintiff Reis and California Class members seek an order enjoining Defendants' false advertising, any such orders or judgments as may be necessary to restore Plaintiff Reis and California Class members any monies acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

## COUNT X
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Classes)

170.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

171.   This claim is brought by Plaintiffs on behalf of the nationwide class, or in the alternative, the state classes under the laws of their respective states.

172.   This claim is pleaded in the alternative to the other claims pleaded herein.

173.   As the intended and expected result of its conscious wrongdoing, Defendants have profited and benefited from the purchase and lease of Class Vehicles equipped with the defect.

174.   Defendants have voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendants' misconduct alleged herein, Plaintiffs and the class were not receiving Class Vehicles of the quality, nature, fitness, or value that had been represented by Defendants, and that a reasonable consumer would expect. Specifically, Plaintiffs and the class members expected that when they purchased or leased Class Vehicles, they would not be defective as alleged herein.

175.   Defendants have been unjustly enriched by their fraudulent, deceptive, unlawful, and unfair conduct, and withholding of benefits and unearned monies from

Plaintiffs and the class, at the expense of these parties.

176.   Equity and good conscience militate against permitting Defendants to retain these profits and benefits.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.   Certification of the proposed class(es), appointment of Plaintiffs and their counsel to represent the proposed class members, and notice to the proposed class to be paid by Defendants;

B.   An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Class Action Complaint;

C.   Injunctive relief in the form of a recall or free starter-generator-alternator replacement program as deemed appropriate to permanently fix the defect;

D.   Equitable relief in the form of buyback of the Class Vehicles;

E.   Costs, restitution, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

F.   An Order requiring Defendants to pay both pre- and post-judgment

interest on any amounts awarded;

     G.     An award of costs and attorneys' fees; and

     H.     Such other or further relief as may be appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, hereby request a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.

Dated: May 4, 2023            Respectfully submitted,

                                    */s/ Andrew W. Ferich*
                                    Andrew W. Ferich (NJ Bar No. 015052012)
                                    **AHDOOT & WOLFSON, PC**
                                    201 King of Prussia Road, Suite 650
                                    Radnor, Pennsylvania 19087
                                    Telephone: (310) 474-9111
                                    Facsimile: (310) 474-8585
                                    aferich@ahdootwolfson.com

                                    Robert R. Ahdoot (*pro hac vice* to be filed)
                                    **AHDOOT & WOLFSON, PC**
                                    2600 W. Olive Avenue, Suite 500
                                    Burbank, California 91505
                                    Telephone: (310) 474-9111
                                    Facsimile: (310) 474-8585
                                    rahdoot@ahdootwolfson.com

                                    Bradley K. King (NJ Bar No. 081472013)
                                    **AHDOOT & WOLFSON, PC**
                                    521 Fifth Avenue, 17th Floor
                                    New York, NY 10175
                                    Tel (917) 336-0171

Fax (917) 336-0177
bking@ahdootwolfson.com

*Attorneys for Plaintiffs and the Putative
Classes*

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

Pursuant to L. Civ. R. 11.2, I hereby certify to the best of my knowledge that the matter in controversy is also the subject of the following action pending in this Court:

*Steinhardt v. Volkswagen Group of America, Inc., et al.*, No. 3:23-cv-02291-MAS-RLS

Plaintiff: Jason Steinhardt

Defendants: Volkswagen Group of America, Inc.; Audi of America, LLC

I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

Dated: May 4, 2023                          <u>/s/ Andrew W. Ferich</u>
                                                         Andrew W. Ferich

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAXMILLIAN REIS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, d/b/a AUDI OF AMERICA, INC., | **CLASS ACTION** |
| Defendant. | |

**CONSUMER LEGAL REMEDIES ACT VENUE AFFIDAVIT
OF PLAINTIFF MAXIMILLIAN REIS**

I, Maximillian Reis, declare and state as follows:

1.      I am over the age of 18 and a Plaintiff in the above-captioned action.  I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.      I make this affidavit as required by California Civil Code § 1780(d).

3.      The complaint in this action is filed in the proper place for trial of this action because Defendants do business within the District of New Jersey and because

1

substantial portions of the events, acts, and omissions that are subject to my claims in this matter occurred with the District of New Jersey.

4.     I declare under penalty of perjury under the law of the State of California and the United States that the foregoing is truce and correct.

Executed on __May 2, 2023__                    _____
                                                Max Reis (May 2, 2023 17:38 PDT)
                                                Maximillian Reis

2